IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE BOGANY, | § | |
| TDCJ NO. 1627201, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-13-2857 |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Joe Bogany, proceeding <u>pro se</u>, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) challenging eight state court judgments finding him guilty and sentencing him to prison for possession of child pornography. Pending before the court is Respondent Stephens's Motion for Summary Judgment with Brief in Support (Docket Entry No. 17). For the reasons explained below, the court will grant Stephens's motion for summary judgment and deny Bogany's petition for writ of habeas corpus. The court will also deny Bogany's motion for evidentiary hearing (Docket Entry No. 20).

## I.   **Factual and Procedural Background**

The records reflect that Bogany was arrested for possession of child pornography in 2008. Between August 29, 2008, and February 27, 2009, eight indictments were filed against Joe Bogany,

each one charging him with a separate act of possession of child pornography enhanced by a prior conviction for theft.[1]   On February 9, 2009, the State filed written notice of its intent to consolidate and cumulate Cause Numbers 1168760 and 1168761, and charges from future indictments that would be filed before trial (Docket Entry No. 10-4, p. 32).

Bogany pled not guilty to the charges, and was tried jointly on the eight indictments.   On February 4, 2010, a jury found Bogany guilty of the eight child pornography charges.[2]   After finding the enhancements true, the jury assessed punishment at 15 years imprisonment and a fine of $2500 for each offense.[3] Bogany received credit for time served in Cause No. 1168760, and the other sentences were ordered to be served consecutively.[4]

---

[1]   See Indictments, The State of Texas v. Joe Bogany, Cause No. 1168760 (Docket Entry No. 10-4, p. 13); Cause No.  1168761 (Docket Entry No. 11-4, p. 12); Cause No. 1205423 (Docket Entry No. 11-7, p. 6), Cause No. 1205426 (Docket Entry No. 11-1, p. 6); Cause No. 1205427 (Docket Entry No. 10-17, p. 6); Cause No. 1205428 (Docket Entry No. 10-14, p. 6); Cause No. 1205429 (Docket Entry No. 10-11, p. 6; Cause No. 1205430 (Docket Entry No. 10-8, p. 6).

[2]   See Judgments The State of Texas v. Joe Bogany, Cause No. 1168760 (Docket Entry No. 12-10, p. 1); Cause No. 1205428 (Docket Entry No. 12-24, p. 86); Cause No. 1205423 (Docket Entry No. 13-2, p. 84); Cause No. 1205426 (Docket Entry 13-7, p. 78); Cause No. 1205427 (Docket Entry No. 13-17, p. 11);  Cause No. 1205428 (Docket Entry No. 14-3, p. 11); Cause No. 1205429 (Docket Entry No. 14-8, p. 27); Cause No. 1205430 (Docket Entry No. 14-12, p. 82).

[3]   Id.

[4]   Id.

2

Bogany appealed the judgments, and both sides filed briefs. The State's brief summarized the facts of the case as follows:

In 2008, Appellant drove twelve-year-old [C.B.] and [K.B.], her friend from the sixth-grade, back to his apartment. (3 RR 16, 21; 4 RR 13). Appellant, a friend of [K.B.]'s aunt, had computer games he let kids play in his apartment, despite having no children of his own. (3 RR 22; 4 RR 13, 27, 39, 66). While there, [K.B.] helped Appellant with his MySpace page, and Appellant showed [C.B.] a video of a woman dancing in inappropriate clothing that you could see her skin through on his laptop. (3 RR 24, 53-54). However, neither [C.B.] nor [K.B.] saw child pornography on the laptop they were allowed to use. (3 RR 30; 4 RR 21).

Appellant started taking pictures of [C.B.] (3 RR 25). Appellant posed her in different positions, though she remained fully clothed. (3 RR 25, 43). He also videotaped her dancing, though [C.B.] admitted later that she came up with the idea of being videotaped. (3 RR 25, 47). Later, Appellant put his hands on [C.B.]'s inner thigh and asked her to unbutton her pants. (3 RR 25-26). He also tried to lift up her shirt, but she did not let him. (3 RR 26). Then, Appellant touched [C.B.]'s behind, and she told him to stop. (3 RR 26). When Appellant asked the girls if they would like to spend the night, they both told him no because they wanted to go back home. (3 RR 27-28). Appellant drove the two girls home, but stopped on the way to climb into the back seat with [C.B.] and tell her not to tell anyone what happened. (3 RR 28; 4 RR 22). The apartment was small, and both [K.B.] and Appellant's wheelchair-bound wife were present the entire time. (3 RR 33; 4 RR 14, 15). While [K.B.] testified that she did not see Appellant do anything inappropriate with [C.B.], she did say she saw a video of a little girl that she thought was improper and that [C.B.] was a truthful girl that she would believe. (4 RR 17, 18, 23).

Based upon interviews with [C.B.] and [K.B.], the police executed a search warrant at Appellant's apartment. (3 RR 79, 140-41). They recovered four computers, three from the bedroom and one from the living room. (3 RR 82, 93). One of the computers taken from the bedroom had a password protected user folder for Appellant. (3 RR 83, 100, 101; 4 RR 42, 55, 56). A

3

forensic examination of that laptop revealed that multiple images had been deliberately downloaded to the picture folder in Appellant's user profile. (3 RR 100-01). There were over 800 items believed to be child pornography and an additional 2600 items of child erotica found on the computer, the majority of which were found in the picture folder under Appellant's password protected profile. (3 RR 98-99, 100-01). These images had been collected over a period of a little more than a year. (3 RR 99). Additionally, police found saved "favorites" in the web browser that linked to a number of sexually explicit websites the forensic examiner knew to contain child pornography. (3 RR 102, 104, 105-06). Appellant claimed that he gave numerous people access to this computer, but he also created different profiles on the computer for guests and his wife. (4 RR 42).

The State introduced all of the images collected from Appellant's computer. (3 RR 108, 122, 124; State's Exhibits #1-10). Both the forensic examiner and the lead investigating officer, Detective J.T. Roscoe, highlighted eight specific images to explain based upon their training and experience why the images constituted child pornography. State's Exhibit # 1 was found in Appellant's profile picture folder and depicts a prepubescent girl reclining in a submissive position displaying her genitals in a lewd manner in the foreground of the picture. (3 RR 109, 110-11, 151-52; State's Exhibit #l). State's Exhibit #2 depicts several naked girls and two naked boys under the age of 18 with the focus of the picture being the breasts and genitals of the children. (3 RR 112,153-54; State's Exhibit #2). State's Exhibit #3 depicts a girl younger than 18 years old performing oral sex on an erect penis, though all that can be seen of the child is the child's head. (3 RR 113, 154; State's Exhibit #3). State's Exhibit #4 shows a completely nude prepubescent girl in a black and white photograph with her partially covered breasts at center frame and her genitalia fully exposed. (3 RR 114, 155; State's Exhibit #4).

State's Exhibit #5 shows a prepubescent Asian girl wearing only a tank top and performing oral sex on a grown man. (3 RR 115, 155; State's Exhibit #5). The image also had a web address for "Street Meat Asia.com" across the bottom of the frame, and apparently came from a series of known child pornographic images called the

"cake series." (3 RR 155, 156-57; State's Exhibit #5).
Moreover, Detective Roscoe explained that he found
pictures on Appellant's computer from four different
series of image collections that had been identified by
the National Center for Missing and Exploited Children as
being child pornography. (3 RR 159-60).

State's Exhibit #6 features a completely nude
prepubescent girl with her nude breasts and genitalia
dominating the center of the frame. (3 RR 116, 161;
State's Exhibit #6). State's Exhibit #7 depicts a
prepubescent girl completely nude in a submissive and
crouched position with her breasts and genitals
displayed. (3 RR 118, 160; State's Exhibit #7). State's
Exhibit #8 shows a nude prepubescent girl holding her
hair up on her head displaying her breasts and genitals.
(3 RR 119, 161; State's Exhibit #8). State's Exhibit #9
contained eight-hundred-and-eighty-three images taken
from Appellant's pictures several of which also depicted
the lewd display of breasts and genitals as well as young
girls engaging in deviate sexual conduct with grown men.
(State's Exhibit #9, e.g. 0001.jpg, 0002.jpg, 0003.jpg,
0017.jpg,    0045.jpg,    0071.jpg,    0074.jpg,    0080.jpg,
0086.jpg,    0120.jpg,    0122.jpg,    0150.jpg,    0165.jpg,
0178.jpg,    0223.jpg,    0372.jpg,    0476.jpg,    0480.jpg,
0558.jpg,    0561.jpg,    0568.jpg,    0569.jpg,    0571.jpg,
0574.jpg,    0604.jpg,    0609.jpg,    0633.jpg,    0644.jpg,
0674.jpg,    0684.jpg,    0687.jpg;    0701.jpg,    0702.jpg,
0715.jpg,    0733.jpg,    0738.jpg,    0799.jpg,    0801.jpg,
0811.jpg, 0813.jpg, 0829jpg, 0831jpg, 0837.jpg, 0840.jpg,
0852.jpg, 0854.jpg, 0864.jpg).

Police also recovered several other items from
Appellant's residence including a couple of teddy bears,
videogames, DVD's, pornographic movies, and videotapes
that contained movies shot from inside the residence
looking out onto the pool area in front of Appellant's
apartment. (3 RR 165; 4 RR 4-5, 6). The videotapes
focused on two girls, [B.H.] and her twin sister as well
as other girls at the pool, all under the age of 18, many
of them prepubescent. (4 RR 6, 7, 10, 49). The videotape
showed prepubescent girls in bathing suits and bikinis
and zoomed in on the front genital region, buttocks and
breasts. (4 RR 7). Appellant's voice is heard on the
video talking to his wife. (4 RR 7). Though the
videotapes went on for a long period of time, the State
only offered samples of the videos into evidence.

(4 RR 8-9). In addition to the videos of the little girls playing at the pool, there also a video that showed Appellant posing ten-to-eleven year old [B.H.] and even pushing her skirt up and placing a teddy bear in her crotch. (4 RR 10).

The police also recovered a printed out chat log from Appellant's bedroom. (4 RR 82-83; State's Exhibit #27). The log reflects a conversation between Appellant, who identified himself as "Lou Bog 2004" and someone named "Linda Melissa" who purported to be a fourteen-year-old girl. (4 RR 69, 83, 84; State's Exhibit #27). Notably, Appellant admitted that his online screen name was "Lou Bog 2004" before the copy of the chat log was introduced into evidence. (4 RR 69). The chat contains graphic sexual discussions including Appellant's apparent delight in the thought that sexual intercourse might cause "Linda Melissa" pain. (State's Exhibit #27).

Appellant claimed that many other people had access to his computers, though he also had prior felony convictions for theft that called his credibility into question. (4 RR 42-43, 54). While he let [C.B.] and [K.B.] use a computer in his living room, more than one laptop was seized and the two girls did not observe any child pornography on that laptop they used. (3 RR 30, 82, 93; 4 RR 21). And while [K.B.]'s mother, Lacresha Simmons, used one of Appellant's computers, she was careful to note that she only used Appellant's wife's computer and not his laptop. (4 RR 29-30).

Most importantly, the sheer volume of the collected images that had been intentionally downloaded into his picture folder on his password protected profile, coupled with the length of time it took to amass such a collection further undercut Appellant's claims that he did not know the child pornography was located on his laptop. (3 RR 178, 182, 183). Detective Roscoe explained that finding actual child pornography is very difficult. (3 RR 182). Collecting such images over a period of thirteen to fifteen months would require daily access to a particular computer and a consistent effort to put together a collection of the size found on Appellant's computer. (3 RR 182-83). And the consistency of all the items pointing to a sexual interest in children such as bookmarked websites, erotic stories, and web searches further demonstrated that the pictures were not placed on the computer by accident. (3 RR 180-81).

See <u>Bogany v. State</u>, 2011 WL 704359, Appellate Brief, 1-6 (internal footnotes omitted); <u>see</u> <u>also</u> Docket Entry No. 10-2, pp. 7-12.

The Court of Appeals for the Fourteenth District of Texas affirmed the district court's judgment on March 1, 2011. <u>Bogany v.</u> <u>State</u>, Nos. 14-10-00138-CR, 14-10-00139-CR, 14-10-00140-CR, 14-10-00141-CR, 14-10-00142-CR, 14-10-00143-CR, 14-10-00145-CR, 14-10-00146-CR.; 2011 WL 704359 (Tex. App. Hous. [14th Dist.], 2011, pet. ref'd.); <u>see</u> <u>also</u> Docket Entry No. 10-3. The Texas Court of Criminal Appeals refused Bogany's petition for discretionary review on September 14, 2011. <u>Bogany v. State</u>, Nos. 0500-11, 0501-11, 0502-11, 0503-11, 0504-11, 0505-11, 0506-11, 0507-11, <u>see</u> <u>http://www.search.txcourts.gov/</u>; 2011 WL 704359.

Bogany filed nine state applications for writs of habeas corpus challenging all eight of his convictions.[5] On August 21, 2013, the Court of Criminal Appeals denied all of the applications without a written order based on the trial court's findings. <u>Ex parte Bogany</u>, Nos. 78,434-03; -04; -05; -06; -07; -08; -09; -010, -011.[6] Bogany also filed two applications for writs of mandamus. Both were denied without written order. <u>Ex parte</u>

---

[5]     Two of the state habeas applications, <u>Ex parte Bogany</u>, Nos. 78,434-04 and 78,434-11, challenged the same conviction.

[6]     <u>See</u> Docket Entry No. 12-9, p. 2; Docket Entry No. 12-24, p. 2; Docket Entry No. 13-2, p. 2; Docket Entry No. 13-7, p. 2; Docket Entry No. 13-12, p. 2; Docket Entry No. 14-2, p. 2; Docket Entry No. 14-7, p. 2; Docket Entry No. 14-12, p. 2; Docket Entry No. 14-17, p. 2.

<u>Bogany</u>, Nos. 78,434-01, -02.[7]  Bogany filed the federal petition before this court on September 18, 2013.[8]

## II.  <u>Standard of Review</u>

**A.   Summary Judgment**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>,

---

[7] <u>See</u> Docket Entry No. 12-1, p.2; Docket Entry No. 12-7, p. 2.

[8] <u>See</u> Application for Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 14; <u>Medley v. Thaler</u>, 660 F.3d 833, 835 (5th Cir. 2011).

37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (quoting Celotex, 106 S. Ct. at 2553).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial.   Id. (citing Celotex, 106 S. Ct. at 2553-54).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

**B.   Presumptions Applied in Habeas Cases**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody."   Harrington v. Richter, 131 S. Ct. 770, 783 (2011).   When considering a summary judgment motion, the court usually resolves any doubts and draws any inferences in favor of the nonmoving party.   Reeves, 120 S. Ct. at 2110.   However, the amendments to 28 U.S.C. § 2254 contained in the AEDPA change the way in which courts consider summary judgment motions in habeas cases.

In a habeas proceeding, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be correct."   This statute overrides the ordinary summary judgment rule.   Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002)

9

(overruled on other grounds by <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004)). Therefore, a court will accept any findings made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The provisions of § 2254(d) set forth a "highly deferential standard for evaluating state-court rulings." <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2066 n.7 (1997). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1519-20 (2000). A decision is an unreasonable application of clearly established federal law "if the

10

state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 1523.

In reviewing a state court's determination regarding the merit of a petitioner's habeas claim, a federal court cannot grant relief if "fair-minded jurists could disagree on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (internal quotation marks omitted).

### III.  **Analysis**

Bogany presents the following claims:

1.  The convictions and his confinement are illegal;

2.  The evidence was legally insufficient;

3.  The evidence was factually insufficient;

4.  Bogany received ineffective assistance of counsel because his attorney failed to object to the stacking order and failed to raise the issue of double jeopardy;

5.  Bogany's sentences are excessive;

6.  There was an illegal search and seizure;

7.  Bogany's sentences violate the Double Jeopardy Clause;

8.  Bogany is actually innocent;

9.  Bogany has newly discovered evidence; and

> 10. Bogany's right to due process was violated because he was denied a free copy of the trial records.[9]

## A.    Claim of Illegal Conviction and Confinement

Bogany argues that his convictions are illegal because they violate the First Amendment and are based on void statutes. Stephens argues that this claim is not cognizable on habeas review. Stephens also argues that the claim is procedurally barred with regard to all but two of the convictions. Finally, Stephens argues that the claim has no merit.

### 1.    Void Statutes - No Constitutional Violation Alleged

Bogany makes a general and terse argument that the statutes used to convict him are void. See Docket Entry No. 1, p. 3. To the extent that Bogany contends that the state habeas court erroneously interpreted the law used to convict him, his argument is baseless because a federal court's function in a habeas proceeding to review a state court's interpretation of its own law. Charles v. Thaler, 629 F.3d 494, 500 (5th Cir. 2011), citing Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995). By complaining only of a state statutory error, Bogany fails to allege a federal constitutional violation. See Hughes v. Dretke, 412 F.3d 582, 590 (5th Cir. 2005), citing Lawrence v. Lensing, 42 F.3d 255, 258 (5th Cir.1994) ("A state prisoner seeking federal court review of his

---

[9]    See Petition for Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1; see also Memorandum of Law in Support of Petition for Writ of Habeas Corpus "Memorandum of Law", Docket Entry No. 3.

12

conviction pursuant to 28 U.S.C. § 2254 must assert a violation of a federal constitutional right."). Therefore, his argument regarding state law interpretation is not cognizable on federal habeas review. Id.

### 2. **Procedural Bar**

To the extent that Bogany alleges a First Amendment violation, Stephens argues that the ground is unexhausted and procedurally barred with regard to all but two of Bogany's convictions.

Under 28 U.S.C. § 2254(b), a habeas petitioner must exhaust available state remedies before seeking relief in the federal courts. See Nobles v. Johnson, 127 F.3d 409, 419-420 (5th Cir. 1997). See also Wion v. Quarterman, 567 F.3d 146, 148 (5th Cir. 2009) ("Before pursuing federal habeas relief, a petitioner is required to exhaust all state procedures for relief.) citing Orman v. Cain, 228 F.3d 616, 619-20 (5th Cir.2000). To exhaust his state remedies, the petitioner must fairly present the substance of his claims to the state courts, and the claims must have been fairly presented to the highest court of the state. Nobles, at 420, citing Picard v. Connor, 92 S. Ct. 509, 512-13 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990). This exhaustion requirement is based on the principle of comity. Coleman v. Thompson, 111 S. Ct. 2546, 2555 (1991). Federal courts follow this principle to afford the state courts the first opportunity "to address and correct alleged violations of state prisoner's federal

rights." Id.  Therefore, a habeas petitioner must pursue his state court remedies before presenting his constitutional claims in a federal petition.  See Rhines v. Weber, 128 S. Ct. 1528, 1533 (2005).

The court has reviewed the grounds raised in each of Bogany's state habeas applications.[10]  In seven of the applications, Bogany only presents the conclusory allegation that the convictions were illegal because the statutes were declared void.  See Docket Entry No. 12-9, p. 13; Docket Entry No. 12-24, p. 13; Docket Entry No. 13-2, p. 13; Docket Entry No. 13-7, p. 13; Docket Entry No. 14-2, p. 13; Docket Entry No. 14-12, p. 13; Docket Entry No. 14-17, p. 12.  Bogany supplemented his other two applications with memoranda of law in which he cited the First Amendment.  See Docket Entry No. 13-12, p. 33; Docket Entry No. 14-7, p. 28.

A petitioner seeking habeas relief in the federal courts must exhaust all of his claims in the state courts.  Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).  It is not enough that he has "been through" the state court system; the substance of the federal

---

[10]  Ex parte Bogany, 78,4343-03 [trial cause no. 1168760] (Docket Entry No. 12-9, pp. 13-22); Ex parte Bogany, 78,4343-04 [trial cause no. 1168761] (Docket Entry No. 12-24, pp. 13-22); Ex parte Bogany, 78,4343-05 [trial cause no. 1205423] (Docket Entry No. 13-2, pp. 13-22); Ex parte Bogany, 78,4343-06 [trial cause no. 1205426] (Docket Entry No. 13-7, pp. 13-22); Ex parte Bogany, 78,4343-07 [trial cause no. 1205427] (Docket Entry No. 13-12, pp. 13-22, 33-56); Ex parte Bogany, 78,4343-08 [trial cause no. 1205428] (Docket Entry No. 14-2, pp. 13-22); Ex parte Bogany, 78,4343-09 [trial cause no. 1205429] (Docket Entry No. 14-7, pp. 13-22, 28-53); Ex parte Bogany, 78,4343-10 [trial cause no. 1205430] (Docket Entry No. 14-12, pp. 13-22); Ex parte Bogany, 78,4343-11 [trial cause no. 1168761] (Docket Entry No. 14-17, pp. 12-21).

14

habeas corpus claim must first be fairly presented to the state courts for review.  Picard v. Connor, 92 S. Ct. 509, 512 (1971).

Bogany has only exhausted his First Amendment claim with respect to two of his convictions, writ no. 78,4343-07 [trial cause no. 1205427] and writ no. 78,4343-09 [trial cause no. 1205429]. The claim has not been presented in the other cases.  Bogany's failure to present this claim for each conviction has prevented the state courts from reviewing it and possibly correcting constitutional errors.  Coleman v. Thompson, 111 S. Ct. at 2555; Ries v. Quarterman, 522 F.3d at 523.  Consequently, the petition may be subject to dismissal for failure to exhaust state court remedies.  See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998), citing Rose v. Lundy, 102 S. Ct. 1198 (1982).  However, the exhaustion requirement is not dispositive if returning the claim to the state courts would be an exercise in futility.  Morris v. Dretke, 413 F.3d 484, 492 (5th Cir. 2005) ("exhaustion is not required if it would plainly be futile."), quoting Graham v. Johnson, 94 F.3d 958, 969 (5th Cir. 1996).

Bogany has already filed state habeas applications challenging his convictions, which the Court of Criminal Appeals denied.  He may not file additional state habeas applications challenging the same convictions to raise claims that could have been previously raised.  TEX. CODE CRIM. P. art. 11.07 § 4.  The United States Court of Appeals for the Fifth Circuit has consistently held that Texas's

15

abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling. <u>Matchett v. Dretke</u>, 380 F.3d 844, 848 (5th Cir. 2004); <u>Henderson v. Crockwell</u>, 333 F.3d 592, 605 (5th Cir. 2003); <u>Horsley v. Johnson</u>, 197 F.3d 134, 137 (5th Cir. 1999). Therefore, the claims that the convictions violate the First Amendment are subject to dismissal pursuant to a procedural bar when no remedies are available in the state courts. <u>Fuller v. Johnson</u>, 158 F.3d 903, 906 (5th Cir. 1998).

Bogany may only overcome his procedural default by demonstrating cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. <u>Morris</u>, 413 F.3d at 491-92. Cause is demonstrated by establishing that some objective external factor impeded his efforts to present his claim to the state courts. <u>Meanes v. Johnson</u>, 138 F.3d 1007, 1011 (5th Cir. 1999). Prejudice is established when a petitioner demonstrates "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Moore v. Quarterman</u>, 534 F.3d 454, 463 (5th Cir. 2008), <u>quoting</u> <u>United States v. Frady</u>, 102 S. Ct. 1584, 1596 (1982).

A petitioner makes a showing that failure to consider a claim would result in a fundamental miscarriage of justice by

demonstrating that he is "actually innocent" of the offense for which he was convicted.  Reed v. Stephens, 739 F.3d 753, 767 (5th Cir. 2014), citing Williams v. Thaler, 602 F.3d 291, 307 (5th Cir. 2010) (citing Schlup v. Delo, 115 S. Ct. 851, 867 (1995); see also Dretke v. Haley, 124 U.S. 1847, 1852 (2004) (fundamental-miscarriage-of-justice exception requires a showing "that a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense."). Under Schlup, the petitioner must prove that, "'in light of all the evidence,''it is more likely than not that no reasonable juror would have convicted him.'"  Bosley v. Cain, 409 F.3d 657, 662 (5th Cir. 2005), quoting Schlup, 115 S. Ct. at 867.

Bogany makes no claim and points to no evidence that establishes cause and prejudice, and he fails to show that he is actually innocent of the crime.  Therefore, the claim that Bogany's criminal convictions are based on voided statutes is subject to dismissal as procedurally barred with regard to six of his eight convictions, cause numbers 1168760, 1168761, 1205423, 1205426, 1205428, 1205430 .  Morris, 413 F.3d at 491-92.

### 3.    **Void Statute Claim is Meritless**

Bogany fails to articulate any facts or laws in support of his claim that the convictions in cause numbers 1168760, 1168761, 1205423, 1205426, 1205428, 1205430 are void.  His unsupported allegations are subject to dismissal without need of further

review.  Murphy v. Dretke, 416 F.3d 427, 436-437 (5th Cir. 2005),
citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir.1983) ("mere
conclusory allegations do not raise a constitutional issue in a
habeas proceeding"); see also Byrne v. Butler, 845 F.2d 501, 513
(5th Cir. 1988) ("It is clear, however, that bold assertions on a
critical issue in a habeas petition, unsupported and unsupportable
by anything else contained in the record, are insufficient to
warrant an evidentiary hearing.").

With regard to cause numbers 1205427 and 1205429, Bogany
presents a more explicit argument, his assertion that his First
Amendment rights were violated, which has been exhausted in the
state courts.  In support of his argument that the convictions are
unconstitutional, Bogany cites Ashcroft v. Free Speech Coalition,
122 S. Ct. 1389 (2002).  (Docket Entry No. 3-1, p. 4).  The Supreme
Court in Free Speech Coalition reviewed Child Pornography
Prevention Act of 1996 (CPPA), a federal statute that outlawed both
computer generated or "virtual" images of children as well as
images that were depictions of actual children being sexually
abused.  Id. at 1401.  The Court distinguished between the two
classes of images noting that the former class of images recorded
no crime and created no victims while the latter required that
children participate in the production of the images.  Id.  The
Court noted that depictions involving live performances of children
were "intrinsically related" to sexual exploitation and abuse of

the subject children.  Id., citing New York v. Ferber, 102 S. Ct. 3248 (2002) (upholding the prohibition of the sale or distribution of child pornography based in part on the continuing harm done to the children whose images were contained in the pornographic images).  In Ferber, the Supreme Court held that child pornography is not protected by the First Amendment.  Ferber, at 3358.

In reviewing and analyzing Bogany's argument that his convictions are void, the state habeas court made the following relevant findings and conclusions of law in each habeas application:

Statutory Validity

6.   The applicant fails to cite specifically which statute(s) he is challenging.

7.   The applicant fails to provide any legal authority to support his allegations.

8.   The applicant offers only conclusory statements that the statute that he was convicted under was "declared void." Writ Application at 6.

9.   The applicant has failed to show that any of the statutes he may be challenging are unconstitutional.

. . . .

Statutory Validity

1.   In the absence of contrary evidence, a court will presume that the legislature acted in a constitutionally sound fashion. Ex Parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

2.   The burden rests upon an individual who challenges the constitutionality of a statute to establish its unconstitutionality. Ex Parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

> 3.   If no constitutional, statutory, or case authority
> is included with a point of error, the Court need not
> address it.  Vuong v. State, 830 S.W.2d 929, 940 (Tex.
> Crim. App. 1992).
>
> 4.   The applicant's allegations contained in the instant
> writ application, even if sworn, are insufficient to
> overcome the State's denials when standing alone.  Ex
> Parte Empey, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

See e.g. State Habeas Record for Ex parte Bogany, No. 78,434-07 (Docket Entry No. 13-16, pp. 63, 67).

The Court of Criminal Appeals denied relief on the basis of the trial court's findings.  (Docket Entry No. 13-12, p. 2).  The state court's determination was not contrary to, or an unreasonable application of clearly established federal law.  Therefore, Bogany's claim has no merit and shall be dismissed.

**B.    Legal Sufficiency of the Evidence**

In his second ground for relief, Bogany alleges that the evidence was legally insufficient and that the Court of Appeals misapplied the correct standard in holding that the evidence was legally sufficient to support the jury's findings that Bogany possessed child pornography (Docket Entry No. 1, p. 10).  Stephens argues that there is no merit to Bogany's allegations as evidenced by the determinations made by the state appellate court.

The standard of review for an insufficient evidence claim in a federal habeas corpus proceeding is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

20

the crime beyond a reasonable doubt." Hughes v. Johnson, 191 F.3d 607, 619 (5th Cir. 1999), citing Jackson v. Virginia, 99 S. Ct. 2781, 2789 (1979). See also Perez v. Cain, 529 F.3d 588, 593 (5th Cir. 2008). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005), quoting United States v. Cyprian, 197 F.3d 736, 740 (5th Cir. 1999). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).

The Fourteenth Court of Appeals made the following findings:

In his second and third issues, appellant claims the evidence is legally and factually insufficient to support the jury's verdicts. The Texas Court of Criminal Appeals recently determined that the Jackson v. Virginia[FN1] standard is the only standard a reviewing court should apply to determine whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt. See Brooks v. State, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). Accordingly, under current Texas law, in reviewing appellant's issues we apply the Jackson v. Virginia standard and do not separately refer to legal or factual sufficiency.

FN1. 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).

We view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. Brooks, 323 S.W.3d at 902. We do not sit as a thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. Id. at 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We defer to the fact finder's resolution of

21

conflicting evidence unless the resolution is not
rational. <u>Brooks</u>, 323 S.W.3d at 907. We defer to the
jury's determinations of the witnesses' credibility and
the weight to be given their testimony because the jury
is the sole judge of those matters. <u>Id.</u> at 899. Our duty
as a reviewing court is to ensure the evidence presented
actually supports a conclusion that the defendant
committed the crime. <u>Williams v. State</u>, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007)

Appellant first claims the evidence failed to establish
the images in question actually constitute child
pornography as defined by statute. <u>See</u> Tex. Pen.
Code §§ 43.25(a)(2), (g), and 43.26(a) (West 2003 &
Supp. 2009). Appellant was charged with possessing three
categories of child pornography: (1) lewd exhibition of
the female breast of a child younger than 18 years; [FN2]
(2) lewd exhibition of the genitals of a child younger
than 18 years; [FN3] and (3) visual depiction of a child
under the age of 18 years engaging in deviate sexual
intercourse, specifically oral sex.[FN4] We consider each
category in turn..

FN2. Appeal No. 14-10-00138-CR (trial court cause
no. 1168760) (State's Exhibit 8); Appeal
No. 14-10-00140-CR (trial court cause no. 1205429)
(State's Exhibit 7); Appeal No. 14-10-00143-CR (trial
court cause no. 1205426) (State's Exhibit 6); and Appeal
No. 14-10-00146-CR (trial court cause no. 1205423)
(State's Exhibit 2).

FN3. Appeal No. 14-10-00139-CR (trial court cause
no. 1205430) (State's Exhibit 4); and Appeal
No. 14-10-00142-CR (trial court cause no. 1205427)
(State's Exhibit 1).

FN4. Appeal No. 14-10-00141-CR (trial court cause
no. 1205428) (State's Exhibit 3); and Appeal
No. 14-10-00145-CR (trial court cause no. 11687761)
(State's Exhibit 5).

**Lewd exhibition of the female breast of a child younger
than 18 years**

Appellant argues the photographs do not show a lewd
exhibition of the child's breast.[FN5] In determining
whether a visual depiction of a child's breast
constitutes a lewd exhibition, we consider whether

22

(1) the focal point of the visual depiction is the breast, (2) the place or pose of the child in the photograph is sexually suggestive, (3) the child is depicted in an unnatural pose or inappropriate attire, (4) the child is fully or partially clothed or nude, (5) the visual depiction suggests sexual coyness or a willingness to engage in sexual activity, or (6) the visual depiction is intended or designed to elicit a sexual response in the viewer.  See Tovar v. State, 165 S.W.3d 785, 791 (Tex. App.-San Antonio 2005, no pet.); and Alexander v. State, 906 S.W.2d 107, 110 (Tex. App.-Dallas 1995, no pet.).

FN5. Appellant does not assert the children depicted are 18 years of age or older.

State's Exhibit 2 depicts four girls, completely nude. Another girl's face, a girl's arm, and the lower half of two nude boys are also shown.  State's Exhibit 6 shows a girl, completely nude, with her hands on the back of her hips, hair pulled back, with a pouting look on her face. State's Exhibit 7 shows a completely nude girl kneeling on the floor. State's Exhibit 8 depicts a girl standing completely nude, with her hands on top of her head, chest thrust forward.

In considering the factors noted above, the focal point of the visual depictions is the girls' breasts. The girls' poses are sexually suggestive. The girls are completely nude and are depicted in unnatural poses. Most of the visual depictions suggest sexual coyness or a willingness to engage in sexual activity. The images appear to be intended or designed to elicit a sexual response in the viewer.  We therefore hold the evidence is legally sufficient for a rational trier of fact to find the photographs show lewd exhibitions of the female breast of a child.

**Lewd exhibition of the genitals of a child younger than 18 years**

Appellant argues the photographs do not show a lewd exhibition of the child's genitals.[FN6] In determining whether a visual depiction of a child's genitals constitutes a lewd exhibition, we consider whether (1) the focal point of the visual depiction is the genitals, (2) the place or pose of the child in the photograph is sexually suggestive, (3) the child is

depicted in an unnatural pose or inappropriate attire, (4) the child is fully or partially clothed or nude, (5) the visual depiction suggests sexual coyness or a willingness to engage in sexual activity, or (6) the visual depiction is intended or designed to elicit a sexual response in the viewer. See Tovar, 165 S.W.3d at 791; and Alexander v. State, 906 S.W.2d at 110.

FN6. Appellant does not assert the children depicted are 18 years of age or older.

State's Exhibit 1 shows a young girl in a bathing suit. The lower part of the suit is a short skirt, with no bottom. The girl is leaning back on her hands, with her feet under her buttocks, so that her genitals are prominently displayed. In the top left-hand corner of the picture is a logo with the words "SEXY ANGELS." Appellant claims "[w]hile her legs are spread the genitals do not appear visible and are partly obscured by the water." The water is crystal clear and in no way obscures the child's genitals. In State's Exhibit 4, a young girl is standing completely nude. Her arms are crossed over her chest and her genitals are exposed.

In considering the factors noted above, the focal points in the photographs are the genitals of the girls. The poses are sexually suggestive. One of the girls is completely nude and the other is only partially clothed. Both girls are depicted in unnatural poses and one is in inappropriate attire. The visual depictions suggest sexual coyness or a willingness to engage in sexual activity and appear to be intended or designed to elicit a sexual response in the viewer. We therefore hold the evidence is legally sufficient for a rational trier of fact to find the photographs show lewd exhibitions of the genitals of a child.

**Visual depiction of a child under the age of 18 years engaging in deviate sexual intercourse**

Appellant does not dispute that both photographs depict a girl engaging in deviate sexual intercourse, specifically oral sex.[FN7] Rather, appellant claims that no rational trier of fact could have found beyond a reasonable doubt the girls were under the age of eighteen. We disagree.

FN7. State's Exhibit 3 is a photograph of a girl licking a man's erect penis. State's Exhibit 5 shows a girl with a man's erect penis in her mouth.

Section 43.25(g) of the Penal Code provides, in pertinent part:

When it becomes necessary for the purposes of this section or Section 43.26 to determine whether a child who participated in sexual conduct was younger than 18 years of age, the court or jury may make this determination by any of the following methods:

...

(2) inspection of the photograph or motion picture that shows the child engaging in the sexual performance;

(3) oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time;

...

Tex. Pen.Code § 43.25(g).

The jury inspected the photographs. Our inspection of the photographs does not support appellant's claim that no rational trier of fact could have found the girls to be under 18 years of age. Moreover, Officer J.T. Roscoe testified State's Exhibit 5 is a depiction of a child performing oral sex on a male sexual organ and upon reviewing State's Exhibit 3, Sergeant Lynn Thomas White testified she saw "a girl that looks like she's under 18 performing oral sex." We therefore conclude the evidence is legally sufficient for a rational trier of fact to find the photographs are a visual depiction of a child under the age of 18 years engaging in deviate sexual intercourse.

For these reasons, we reject appellant's claim the evidence failed to establish the images in question constitute child pornography.

Appellant's second challenge regarding the sufficiency of the evidence is that the State failed to prove he knowingly possessed those items. Specifically, appellant asserts the State did not prove his connection with the images was more than fortuitous. Appellant points to the

fact that he was not the exclusive occupant of the premises and other persons were allowed to use his computers.

The record reflects four computers were taken from appellant's home. One of the computers had a password-protected user folder for appellant. Multiple images were deliberately downloaded to the picture folder in appellant's user profile. Over 800 images of child pornography and over 2600 images of child erotica were found on the computer and the majority of those images were in the picture folder under appellant's password-protected profile. There were many "favorites" saved under appellant's user profile that linked to sexually explicit websites containing child pornography. There were images on appellant's computer from four different series that had been identified by the National Center for Missing and Exploited Children as being child pornography. The images found on appellant's computer were collected for over a year. There was testimony that finding actual child pornography is very difficult and to amass a collection the size found on appellant's computer would require daily access and a consistent effort.

Appellant had created different profiles on the computer for guests and his wife but testified that if he was already logged on in his user name, he would let others use his computer without logging on again. Appellant denied that all of the "favorites" linking to pornography sites were saved by him on his user profile. Appellant testified all of his computers had been infected with viruses. He also testified he had never seen the images that were shown in court. Appellant said he did not have an explanation for the images downloaded on his computer, "but it could have been a virus."

Lieutenant Matthew Gray, commander of the Internet Crimes Against Children Task Force for the Houston Region, testified he had never found a virus that actually downloaded child pornography to someone else's computer. In the last year alone, Gray had conducted approximately 320 investigations and had never investigated a case where a virus was to blame. Gray testified a collection the size of the one on appellant's computer was large enough to be obvious to the owner of the computer.

Police also recovered videotapes of girls at the pool in front of appellant's apartment. Appellant's voice is

26

heard on the tape but he denied being the one operating the camera. Appellant did not know who was operating the camera. The girls being videotaped were under the age of eighteen, many of them pre-pubescent. The video zoomed in on the front genital area, buttocks, and breasts. Additionally, there was a videotape of appellant posing a girl, aged ten to eleven. He pushed up her skirt and placed a teddy bear in her crotch.

Police also recovered a print-out of a chat log containing a sexually explicit conversation between "Lou Bog 2004," supposedly a sixteen-year old boy, and "Linda Melissa," purportedly a fourteen-year old girl. Appellant admitted his screen name was "Lou Bog 2004" but denied chatting with people under the age of eighteen and lying about his age. Appellant also testified he had never seen the print-out.

[C.B.] testified that in March 2008, when she was eleven, she went to appellant's apartment with a friend and appellant took pictures of her. He put his hands on the inside of her thighs and asked her to unbutton her pants. Appellant also tried to lift her shirt and touched her behind, under her clothing. Chayene testified appellant told her not to tell anyone what happened at the apartment because he would get in trouble. Appellant testified he did not do anything inappropriate to Chayene and denied telling her not to say anything.

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. Lee v. State, 21 S.W.3d 532, 539 (Tex. App.-Tyler 2000, pet. ref'd). A jury can infer knowledge from all the circumstances, including the acts, conduct, and remarks of the accused and the surrounding circumstances. Ortiz v. State, 930 S.W.2d 849, 852 (Tex. App.-Tyler 1996, no pet.); see also Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Although appellant denied having downloaded the images, it was for the jury to determine his credibility and the weight to be given his testimony. See Brooks, 323 S.W.3d at 899. From the circumstances, a rational trier of fact could find appellant knowingly possessed child pornography.

Accordingly, we find the evidence sufficient to support appellant's conviction and overrule issues two and three.

The judgment of the trial court is affirmed.

Bogany v. State, 2011 WL 704359 at **2-6. The Fourteenth Court of Appeal's conclusion is based on the jury's findings. As finder of fact, the jury has the sole authority and responsibility for weighing the conflicting evidence and determining the credibility of the witness testimony. United States v. Green, 180 F.3d 216, 220 (5th Cir. 1999); United States v. Millsaps, 157 F.3d 989, 994 (5th Cir. 1998). It is not the courts' role to second-guess the juries' determinations. United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005).

The state court's determination is supported by the record and must be presumed correct by this court. Pemberton v. Collins, 991 F.2d 1218, 1225 (5th Cir. 1993). This court agrees that there was ample evidence to support the jury's finding that Bogany was guilty beyond a reasonable doubt. See United States v. Asibor, 109 F.3d 1023, 1030-31 (5th Cir. 1997). The state court's rejection of Bell's sufficiency of the evidence claim is not an unreasonable application of Jackson v. Virginia, and he is not entitled to relief under AEDPA. Therefore, the claim will be dismissed.

## C.   **Factual Sufficiency of the Evidence**

Bogany contends that the evidence was factually insufficient to show that he knowingly possessed child pornography. The factual sufficiency test is rooted in the Texas Constitution, and at one time, was followed by the Texas courts in reviewing the elements of an offense on appeal. Woods v. Cockrell, 307 F.3d 353, 358 (5th

28

Cir.2002), <u>citing</u> <u>Clewis v. State</u>, 922 S.W.2d 126 (Tex. Crim. App. 1996).  The test requires more scrutiny than the federal constitutional standard set forth in <u>Jackson v. Virginia</u>.  <u>Id.</u> at 357-58.  Federal courts do not apply the <u>Clewis</u> standard, which is based on Texas state law, in federal habeas review.  <u>Woods</u>, at 358. Moreover, the Texas Court of Criminal Appeals has overruled the factual sufficiency standard of <u>Clewis</u> and has held that the legal sufficiency standard, enumerated in <u>Jackson v. Virginia</u>, is applicable in determining whether the evidence is the sufficient to uphold each element of the offense.  <u>Brooks v. State</u>, 323 S.W.3d 893, 895 (Tex. Crim. App., 2010).  The claim regarding the factual sufficiency of the evidence will therefore be dismissed because it is not cognizable in this § 2254 proceeding.

### D.    <u>Effective Assistance of Counsel</u>

In his fourth claim for relief, Bogany argues that he received ineffective assistance of counsel because his attorney failed to object to the trial judge's order cumulating (or "stacking") the eight sentences.  Docket Entry No. 1, p. 11.  He also contends that his attorney was ineffective for failing to raise a double jeopardy issue.  <u>Id.</u> Stephens argues that the claim is meritless.

To establish that he was denied effective assistance of counsel at trial, Bogany must prove: (1) deficient performance by counsel and (2) actual prejudice to the defense as a result of the deficient performance.  <u>Strickland v. Washington</u>, 104 S. Ct. 2052,

2064 (1984).  To meet the first prong, Bogany must prove that the errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Constitution.  Id.  "[T]here is a strong presumption that the performance [of counsel] falls within the wide range of reasonable professional assistance." Carter v. Johnson, 131 F. 3d 452, 463 (1997).

To meet the second prong, Bogany must prove that "counsel's errors were so serious as to deprive [Bogany] of a fair trial, a trial whose result is reliable." Strickland, 104 S. Ct. at 2064. A "mere possibility" that a different result might have occurred is not enough to demonstrate prejudice.  Lamb v. Johnson, 179 F.3d 452, 463 (5th Cir. 1997).  Further, application of Strickland's second prong under § 2254(d) compels the court to ask "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788. If the Court can surmise a reasonable explanation, Bogany's burden has not been met.  Id.  The Court will now apply this heightened Strickland standard to each of Bogany's claims for ineffective assistance of counsel.  See Strickland, 104 S. Ct. at 2064.

Bogany's claim of ineffective assistance of counsel for failing to object to the cumulated sentences and not raising a double jeopardy claim was reviewed by the state courts when Bogany filed his § 11.07 post conviction challenges.  In response to his allegations, the trial court ordered Bogany's trial attorney, Laine

Douglas Lindsey, to file an affidavit addressing the ineffective assistance of counsel issues raised by Bogany. (Docket Entry No. 12-9, pp. 48-49). Lindsey, a 20-year trial lawyer and board certified criminal law practitioner, gave specific answers to each allegation. Id. at 53-55.

Lindsey made the following response to Bogany's claim that a special plea of double jeopardy should have been entered and that Lindsey should have filed an objection to the multiple convictions:

> I did not believe that it was beneficial or necessary to enter a special plea of double jeopardy on the applicant's behalf because I believed (and still do) that the law in Texas is well settled on that issue. In 1998 the Texas Court of Criminal Appeals held, in response to clearly stated legislative intent, that each image of child pornography was an "allowable unit of prosecution" and that multiple convictions arising from a single episode didn't violate double jeopardy. Vineyard v. State, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998).

Id. at 54.

Lindsey made the following response to Bogany's claim that an objection should have been made to the stacking order:

> As I explained to Mr. Bogany many times, Texas Penal Code Sec. 3.03(b)(3)(A) sets out that sentences for multiple convictions arising from the same episode may be ordered to be served consecutively when they are for an offense "under Section 21.15 or 43.26, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections." As Mr. Bogany was convicted for eight offenses under 43.26, the court had the authority to cumulate his sentences.

Id. at 55.

31

After Lindsey submitted his response, the trial court made the following findings:

> 11. The Court has read the affidavit of trial counsel Laine Lindsey, and finds it to be reliable and credible.
>
> 12. Lindsey chose not to enter a special plea of double jeopardy on the applicant's behalf because his understanding of the law is that the Court of Criminal Appeals has held that each image of child pornography is an allowable unit of prosecution.
>
> 13. Lindsey chose not to enter a special plea of double jeopardy on the applicant's behalf because his understanding of the law is that multiple convictions arising from a single episode did not violate double jeopardy protections.
>
> 14. Lindsey advised the applicant many times that the eight cases the applicant was charged with did not violate the applicant's double jeopardy protections.
>
> 15. Lindsey explained to the applicant many times that sentences for multiple convictions arising from the same episode may be ordered to be served consecutively when they are for the felony offense of possession of child pornography under Texas Penal Code section 43.26, regardless of whether the applicant was convicted of violations of the same sections more than once.
>
> 16. Lindsey did not object to the trial court's order to cumulate the applicant's sentences because his understanding of the law is that, because the applicant was convicted of eight counts of the felony offense of possession of child pornography, the court had the authority to cumulate his sentences.

Id. at 59-60.

Based on these findings, the trial court determined that Bogany had failed to demonstrate that Lindsey's performance fell below an objective standard of reasonableness and that but for Lindsey's unprofessional errors the outcome of Bogany's criminal

proceeding would have been different.  Id. at 64.  The court then concluded that the: "totality of the circumstances demonstrates that the applicant was afforded counsel sufficient to protect his right to reasonably effective assistance of counsel." Id.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008).  The state habeas record reflects that Lindsey did not raise an objection to the multiple convictions and stacked sentences because he realized that such a challenge would not succeed.  An attorney is not deficient if he chooses not to make an objection because he knows it has no legal basis.  Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007).  On the contrary, such a move is an effective tactic in the courtroom and an important aspect of thoughtful trial advocacy.  Id.; see also Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering;  it is the very opposite."); Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) ("Defense counsel is to be complimented for remembering that he who often objects, only to have his objections over-ruled, risks alienating the jury even if he does not test the patience of the presiding judge.").

The state court's adjudication of Bogany's claims regarding his trial attorney's performance was not a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor has Bogany shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

**E.   Sentence Length**

Bogany argues that his sentences exceed the statutory limit and are excessive.   The state district court made the following findings with regard to this claim:

> 18. The applicant was sentenced to fifteen years in the Texas Department of Criminal Justice—Institutional Division in each of the eight cases, in a single proceeding to the jury.

> 19. Cause number 1168760 (the instant case) was ordered to run concurrently, with the time the applicant had already served while awaiting trial.

> 20. The sentences in cause numbers 1168761, 1205423, 1205426, 1205427, 1205428, 1205429, and 1205430 (companion cases) were all ordered to be served consecutively.

Docket Entry No. 12-9, p. 60.

Based on these factual findings, the trial court entered the following conclusions of law:

> 13. The decision to cumulate sentences lies within the discretion of the trial court. Tex. Code Crim. Proc. Ann. Art. 42.08(a) (Vernon 2012).

34

14. The Texas Legislature specifically delineated the offense of possession of child pornography of the Texas Penal Code as a "stackable" offense.  Tex. Penal Code Ann. § 3.03(b)(3)(A) (Vernon 2011).

15. Article 42.08 of the Code of Criminal Procedure allows a trial court, in its discretion, to order that a sentence imposed from a second and subsequent convictions to begin when the sentence imposed in a preceding conviction has ceased to operate.  Tex. Code Crim. Proc. Ann. Art. 42.08 (Vernon 2012).

Docket Entry No. 12-9, pp. 64-65

The state habeas court determined that the state laws had been correctly applied in sentencing Bogany.  A federal court reviewing a § 2254 habeas application does not review a state's interpretation of its own law.  Hughes, 412 F.3d at 590; Weeks v. Scott, 55 F.3d at 1063.  Moreover in light of the record, which demonstrates that Bogany has an extensive history of child pornography as well as sexual abuse of children, the extent of his punishment is not disproportionate to the severity of the offenses he committed.  Smallwood v. Johnson, 73 F.3d 1343, 1346 -1347 (5th Cir. 1996).  The state court's adjudication of Bogany's claims regarding the length of his sentence was not a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor has Bogany shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

35

**F.    Search and Seizure**

Bogany argues that the police conducted a warrantless search of his apartment and illegally seized materials that were used against him at trial.  (Docket Entry No. 3-2, pp. 3-4).  It is well settled law that a claim challenging the admission of evidence at trial pursuant to an unconstitutional search and seizure is not cognizable in a federal habeas proceeding if the state has provided the opportunity for a full and fair litigation of the claim.  Stone v. Powell, 96 S. Ct. 3037, 3046 (1976).  Consequently, Stone bars Bogany from raising a search and seizure claim in this habeas proceeding because Texas law allowed him to present it at trial and on direct appeal.  Register v. Thaler, 681 F.3d 623, 628 (5th Cir. 2012).  This rule applies regardless of whether Bogany took advantage of this opportunity at trial and on appeal.  Id.  Bogany makes no showing that he was prevented from fully and fairly litigating this claim.  Therefore, it is subject to dismissal because there has been no unreasonable application of clearly established federal law.  Moreno v. Dretke, 450 F.3d 158, 167 (5th Cir. 2006).

**G.    Double Jeopardy**

Bogany contends that his multiple convictions violate the Double Jeopardy Clause.  (Docket Entry No. 3-2, pp. 5-6).  Stephens contends that the claim has no merit.  The court has previously touched on the substance of this claim while reviewing the merit's

of Bogany's claim that he was denied effective assistance of counsel at trial. Supra at 31-33. The state habeas court made the following findings regarding his claim of double jeopardy:

> 22. As reflected in the judgments and sentences, the jury found the applicant guilty of eight felony offenses of possession of child pornography in cause numbers 1168760 (the primary case), 1168761, 1205423, 1205426, 1205427, 1205428, 1205429, and 1205430 (the companion cases), in a single proceeding to the jury.
>
> 23. The State alleged, and the applicant was convicted of eight counts of possession of child pornography involving eight separate images.
>
> 24. The Fourteenth Court of Appeals reviewed State's Trial Exhibits 1 through 8. Bogany v. State, No. 14-10-00138-CR, slip op. at 2-5, 2011 WL 704359, at *2-*4.
>
> 25. Exhibits 1 through 8 are the images upon which the eight indictments in these cases are based. (3 R.R. 108-118).
>
> 26. State's Trial Exhibit 8 is the image upon which the instant case is indicted. (3 R.R. 118).
>
> 27. The Fourteenth Court of Appeals discussed each individual image at length, indicating there were eight distinct images of child pornography and actually deciding each image was, in fact, pornography. Bogany v. State, No. 14-10-00138-CR, slip op. at 2-3, 2011 WL 704359, at *2-*4.
>
> 28. The applicant was lawfully convicted of eight separate offenses, or "allowable unit[s] of prosecution." Vineyard v. State, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998).

Docket Entry No. 12-9, pp. 60-61.

The trial court then made the following conclusions:

> 17. The double jeopardy clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple

37

punishments for the same offense. <u>North Carolina v.
Pearce</u>, 395 U.S. 711 (1969).

18. Cumulative punishment may be imposed where separate
offenses occur in the same transaction, as long as each
conviction requires proof of an additional element which
the other does not. <u>Phillips v. State</u>, 787 S.W.2d 391,
394 (Tex. Crim. App. 1990) (citing <u>Blockburger</u>, 284 U.S.
at 304).

19. The Court of Criminal Appeals held that <u>Blockburger</u>
does not preclude multiple punishments for violation of
the same statute where there are multiple offenses
involved. <u>Vineyard v. State</u>, 958 S.W.2d 834, 836 n.5
(Tex. Crim. App. 1998).

20. The Court of Criminal Appeals has previously held
"the Legislature intended in cases like this to make
possession of each item of child pornography an
'allowable unit of prosecution.'" <u>Vineyard v. State</u>,
958 S.W.2d 834, 838 (Tex. Crim. App. 1998) (emphasis
added).

Docket Entry No. 12-9, p. 65.

The general purpose of Double Jeopardy Clause is to prevent
the State from trying and punishing an individual more than once
for the same act which violates the State's laws. <u>Serfass v.
United States</u>, 95 S. Ct. 1055, 1062 (1975). It does not prevent
the State from convicting and imposing multiple punishments for
separate acts or transactions in violation of the law. <u>United
State v. Woerner</u>, 709 F.3d 527, 540-541 (5th Cir. 2013) (upholding
convictions of multiple counts of possession of child pornography).
Bogany's Double Jeopardy claim shall be dismissed because he has
failed to show that the state court's decision is an unreasonable
application of clearly established federal law as established by
the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor

has Bogany shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).

### H.   Actual Innocence – New Evidence

Bogany contends that he is actually innocent of the crimes based on newly found evidence.  Actual innocence is not a basis for habeas corpus relief absent an independent constitutional violation.  Foster v. Quarterman, 466 F.3d 359, 367 (5th Cir. 2006), citing Herrera v. Collins, 113 S. Ct. 853, 860 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact."  Herrera, 113 S. Ct. at 860, citing Moore v. Dempsey, 43 S. Ct. 265, 265 (1923) (Holmes, J.) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved").  Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency."  In re Warren, 537 F. App'x 457, 462 (5th Cir. 2013), quoting Bousley v. United States, 118 S. Ct. 1604, 1611 (1998).  "To establish actual innocence, petitioner must demonstrate that, 'in

light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, at 1611, quoting Schlup v. Delo, 115 S. Ct. 851, 867-868 (1995).

"[E]ven if a truly persuasive claim of actual innocence could be a basis for relief, the Supreme Court made clear that federal habeas relief would only be available if there was no state procedure for making such a claim. Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003), citing Herrera, 113 S. Ct. at 869. "Texas habeas law recognizes claims of actual innocence." Id., citing Ex parte Elizondo, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). The federal habeas court should examine and review the findings and conclusions of the Texas courts regarding the petitioner's claim of actual innocence based on new evidence. See Reed v. Stephens, 739 F.3d 753, 772-773 (5th Cir. 2014).

The state habeas court made the following findings of fact:

Actual Innocence

29. Because the applicant has not presented an otherwise barred constitutional claim for consideration, Schlup does not apply to the applicant's actual innocence claim.

30. The applicant has failed to include sufficient specific facts establishing that the current claims could not have been presented previously because the factual or legal basis for the claims was unavailable; or that, by a preponderance of the evidence, no rational juror could have found the applicant guilty beyond a reasonable doubt. Tex. Crim. Proc. Code art 11.07 § 4(a) (Vernon Supp. 2012).

31. The instant application is completely lacking in any newly discovered evidence necessary to establish the

applicant's innocence under either the <u>Herrera</u> or <u>Schlup</u> standards. <u>Elizondo</u>, 947 S.W.2d at 209.

32. Since the applicant fails to present any allegation of newly discovered evidence, the applicant fails to carry his initial habeas burden for an actual innocence claim.

<u>Newly Discovered Evidence</u>

33. At trial, both defense counsel and the applicant raised the possible defense of a computer virus as the source of the child pornography on the applicant's computer. (3 R.R. 185; 4 R.R. 52-53, 59, 67, 77, 79).

34. Appellate counsel also raised the possible defense of a computer virus as the source of the child pornography on the applicant's computer on appeal. <u>Bogany v. State</u>, No. 14-10-00138-CR, slip op. at 4, 2011 WL 704359, at *5.

35. The applicant fails to show that he is innocent in the primary case, because he merely restates his defenses already available at trial and provided no new evidence in the instant application. <u>Ex parte Brown</u>, 205 S.W.3d at 546-547.

36. The applicant fails to prove that he is innocent by clear and convincing evidence, and also fails to prove that any constitutional error "probably" resulted in the conviction of one who is innocent.

37. The applicant has failed to prove by clear and convincing evidence that a jury would acquit him based on newly-discovered evidence. <u>Ex parte Elizondo</u>, 947 S.W.2d 202 (Tex. Crim. App. 1996); <u>State ex rel. Holmes v. Third Court of Appeals</u>, 885 S.W.2d 389 (Tex. Crim. App. 1994).

Docket Entry No. 12-9, pp. 61-62.

The Texas Court of Criminal Appeals denied Bogany relief based on the trial court's findings. <u>Id.</u> at 2. Bogany has the burden of overcoming the presumption that the factual findings of the state courts are correct by providing clear and convincing evidence that proves that the findings are objectively unreasonable. 28 U.S.C.

41

§ 2254(e); Morales v. Thaler, 714 F.3d 295, 302 (5th Cir. 2013). This is a "substantially higher threshold" than proving that the findings are incorrect. Morales, at 302, citing Blue v. Thaler, 665 F.3d 647, 654-55 (5th Cir. 2011). It is not enough to show that "a federal court would have reached a different conclusion." Id., quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010). Bogany has failed to provide any evidence showing that the findings of the Court of Criminal Appeals are unreasonable. Therefore, his claim that he is actually innocent based on newly found evidence shall be dismissed.

## I.   Due Process - Access to Records

In his final claim for relief, Bogany argues that he was denied due process because he was not provided with a free copy of his trial records despite his inability to pay for them. (Docket Entry No. 3-2, pp. 11-13). The state habeas court reviewed and rejected this claim on the merits after making the following findings:

> 38. The applicant's implied request for a free transcript is not the proper basis for habeas relief.
>
> 39. The applicant's claims are not of a jurisdictional defect nature, nor are his claims regarding a fundamental or constitutional right.
>
> 40. The applicant has failed to allege and prove sufficient facts, which if true, would entitle him to relief. Ex parte Maldonado, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985).

Docket Entry No. 12-9, p. 40.

42

The state habeas court also made the following conclusions:

> 27. Indigent and pro-se litigants must adhere to the requirements imposed by Tex. R. App. Proc. 20.2 concerning the timely filing of an affidavit showing entitlement to a free transcript.
>
> 28. The decision whether to grant or deny a request for a free transcript is totally within the discretion of the trial court, and a defendant does not have an absolute right to a free transcript. Rosales v. State, 748 S.W.2d 451, 455 (Tex. Crim. App. 1987).

Id. at 66.

"An indigent habeas petitioner 'is not entitled to a free copy of his [trial] transcript and record to search for possible trial defects merely because he is an indigent.'" Johnson v. Johnson, 194 F.3d 1309, 1999 WL 767047, *1 (5th Cir. 1999), quoting Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975). See also Deem v. Devasto, 140 F. App'x 574, 575 (5th Cir. 2005) ("[T]here is no constitutional mandate that a habeas petitioner must be provided a free copy of his state habeas trial record."). United States v. Herrera, 474 F.2d 1049 (5th Cir. 1973) ("This Court has consistently held that a federal prisoner is not entitled to obtain copies of court records at the government's expense to search for possible defects merely because he is an indigent."). An indigent petitioner is only entitled to a free copy if he set forth facts showing that it is necessary for a fair adjudication of at least one of his claims. See Smith v. Beto, 472 F.2d 164, 165 (5th Cir. 1972) ("[T]he petitioner has not shown that the district court erred in holding that he had not demonstrated a need for the trial

transcript in proving a denial of effective counsel."). Bogany fails to articulate any facts in his petition, or in his response to Stephens's motion for summary judgment, which show that denial of a copy of the record prevented him from presenting an actionable claim. See Docket Entry No. 3-2, pp. 11-13; Docket Entry No. 19, pp. 59-62.

Moreover, there is no factual support for Bogany's claim because the habeas record shows that his appellate attorney had a copy of the trial record during the direct appeal. See Appellant's Brief with References to Trial Transcript and Clerk's Record, Docket Entry No. 10-1, pp. 9-13. A criminal appellant does not have a right to actual possession of the trial record if his appellate counsel has access to it. Smith, 472 F.2d at 165; see also Deem, 140 F. App'x at 575 ("[T]here is no constitutional mandate that a habeas petitioner must be provided a free copy of his state-court criminal trial record."), citing Smith, 472 F.2d at 165; Sloan v. Collins, 21 F.3d 1109, 1109 (5th Cir. 1994) ("An appellant whose counsel has the trial record has no constitutional right to a copy for himself."), citing Smith, 472 F.2d at 165 (not selected for publication). The state court's adjudication of Bogany's due process claim was not a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor has Bogany shown that the

state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

Stephens has shown that there is no merit to any of Bogany's claims.   Therefore, the court will grant Stephens's motion for summary judgment and dismiss Bogany's petition for a writ of habeas corpus.

### IV.   Motion for Evidentiary Hearing

Bogany has filed a motion for evidentiary hearing in order to allow him an opportunity to fully examine the record.   Habeas petitioners may be permitted to conduct discovery if good cause is shown.   Rector v. Johnson, 120 F.3d 551, 562 (5th Cir. 1997). However, the rules regarding habeas proceedings do not sanction "fishing expeditions" based on unsupported allegations.   See Perillo v. Johnson, 79 F.3d 441, 444 (5th Cir. 1996), citing Rule 6 of the Rules Governing Section 2254 Cases.   Bogany's motion for evidentiary hearing (Docket Entry No. 20) will be denied because it is baseless.   Lave v. Dretke, 416 F.3d 372, 380-381 (5th Cir. 2005), citing United States v. Webster, 392 F.3d 787, 802 (5th Cir. 2004).

## V.  <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253, Bogany needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his Petition.   To obtain a certificate of appealability Bogany must make a substantial showing of the denial of a constitutional right.  <u>Williams v. Puckett</u>, 283 F.3d 272, 276 (5th Cir. 2002).   To make such a showing Bogany must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1073 (5th Cir. 1998).   For the reasons stated in this Memorandum Opinion and Order, Bogany has not made a substantial showing of the denial of a constitutional right. <u>Newby v. Johnson</u>, 81 F.3d 567, 569 (5th Cir. 1996).   The court will therefore deny a Certificate of Appealability in this action.

## VI.  <u>Conclusion and Order</u>

For the reasons explained above, the court **ORDERS** the following:

1.   The Motion for Extension of Time to File a Response (Docket Entry No. 18) is **GRANTED**

2.   Respondent Stephen's Motion for Summary Judgment (Docket Entry No. 17) is **GRANTED**.

3.   The Motion for Evidentiary Hearing (Docket Entry No. 20) is **DENIED**.

46

4    The Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE**.

5.   A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this the 11th day of September, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

47